## Frederick Grondenberg v. Catherine Grondenberg.

### Gen. No. 4,261.

1. HUSBAND AND WIFE—*when section 9 of chapter 68 does not apply to gifts passing between.* If a husband makes a gift of chattel property to his wife by purchasing the same for her so that the title thereto passes direct from the vendor to his wife, it is not essential to the validity of such a gift that there pass between them any writing, acknowledged and recorded, as required of chattel mortgages where possession remains with the mortgagor.

2. BILL OF EXCEPTIONS—*how, construed.* A bill of exceptions is the pleading of the party presenting it and is to be construed most strongly against him.

Action of replevin. Appeal from the County Court of Peoria County; the Hon. WILBERT I. SLEMMONS, Judge, presiding. Heard in this court at the October term, 1903. Affirmed. Opinion filed March 14, 1904.

COVEY & COVEY and JOSEPH A. WEIL, for appellant.

E. HEDRICK and CROWDER & BARRETT, for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

This was replevin by Catherine Grondenberg against her husband, Henry, his brother Frederick, and Albert Trefzger, for a piano, which the declaration averred she owned and defendants wrongfully took and detained. The pleas were *non cepit, non detinet,* and property in Frederick, and to the latter plea, a replication of property in plaintiff. The suit

was dismissed as to Trefzger, and the court instructed the jury to find Henry not guilty. Plaintiff had a verdict and a judgment against Frederick, and the latter appeals.

There is no substantial conflict in the testimony. It is clear appellee owned the piano. Section 9 of chapter 68 of the revised statutes enacts that where husband and wife are living together, no transfer or conveyance of goods and chattels between them shall be valid as against the rights and interests of any third person, unless in writing and acknowledged and recorded, as required in case of chattel mortgages where possession is to remain with the mortgagor. Appellant claims appellee got title from her husband, with whom she was living, and that as there was no conveyance in writing the transfer was void as to appellant. In August, 1902, appellee's husband told her he was going to give her a piano. He went to a house which dealt in musical instruments, looked at pianos and inquired prices, saying he was going to get one for his wife. He came again and arranged to have the company take his horse at a certain price upon the purchase of a piano, and then said his wife would come down and look at the pianos. She came, examined several, selected this one, and the sellers delivered it to her at the house where she and her husband lived together. The testimony is explicit that appellee selected the instrument and that the company delivered it to her. It was not delivered to her husband. This is not a case where the husband bought the property, received it into his possession and owned it, and afterwards gave it to his wife. The practical meaning of the proof here is that after arranging to have his horse taken at a certain price in part payment for a piano, he sent his wife to buy a piano for herself and said he would pay for it, and she went and selected this piano and the company delivered it to her, and the title passed from the company to her, and her husband afterwards paid for it. Suppose it had been a diamond ring or some other article easily carried, and she had carried it home from the store after obtaining it under the above circumstances, and afterwards some one had wrongfully taken

it from her; would there be any doubt that she could maintain replevin for the article? We think it must be answered that she could, and that must be because she acquired the legal title when she selected it and took it from the store as her own. The only difference between the case supposed and the one at bar is that here the article was so heavy that she could not carry it, and instead of delivering it to her in the store the sellers carried it to her home and delivered it to her there. The statute seems to be aimed at cases where one of a married couple living together, as, for example, the husband, owns and possesses personal property, and after he sells it or it is seized on execution against him, the wife seeks to defeat such sale or seizure by the claim that the title had previously passed from her husband to her, though there had been and could be no visible change of possession. In such case the statute requires the previous execution, acknowledgment and recording of a conveyance from husband to wife, with the formalities prescribed in case of a chattel mortgage where the possession is not to be changed, and in the absence thereof the secret transfer from husband to wife is not valid as to third parties. Here, the jury were warranted in finding the title had never been in the husband, and he had never, had possession, except such appearance of possession as a husband has of articles of personal property owned by his wife and in use about the house. In the present case appellant and his wife visited appellee and her husband soon after the purchase of this piano, and appellant was then fully advised of appellee's ownership thereof. Several witnesses testified Henry told them the same. It is not shown Henry ever claimed, to own the piano, or that appellant or any one was ever misled in any way as to its ownership.

No doubt the fact that the piano was paid for by the property and money of the husband would, under certain circumstances, subject it to the claims of the husband's judgment and execution creditors in some appropriate proceeding, as by a creditor's bill or by a bill in aid of an execution. But appellant did not plead any rights growing

out of any such relation. He was, at most, but a simple
contract creditor of appellee's husband, and his position
as such creditor gave him no rights as against this prop-
erty, under the issues in this action at law, where legal title
and rights only are involved. The only claim he asserts here
which can be considered in this action under the pleadings,
is that he is a purchaser from the husband, and that pur-
chase was with full knowledge that appellee owned the
piano. To enable him to defeat appellee's title, it must
appear that she got title from her husband, and that appel-
lant bought from the husband in good faith. This element
of good faith was recognized in the fourth instruction re-
quested by appellant which the court gave after modifica-
tions in other respects.

Not only were the jury warranted in finding appellee's
title did not come from her husband, but we also think the
proof raises serious doubts of the *bona fides* of the supposed
purchase by appellant from Henry. On the morning of
March 21, 1903, Frederick and Henry Grondenberg came
together to the house where appellee and her husband,
Henry, were living. Their coming evidently was pre-
arranged and for a common purpose. Henry then told appel-
lee he was going to leave her, and she had better take her
things to her mother's house and he would take his things
to his mother's. Frederick then began dismantling the
rooms, and Ed, another brother, arrived soon after. Henry
telephoned for a conveyance to move the piano. Appellee,
in the presence of appellant, said that the piano was hers
and should be taken to her mother's. Henry replied that
he was going to take it to a warehouse, and that it would
be well taken care of. It was not true that he intended to
take it to a warehouse. It was loaded upon a conveyance,
and Ed Grondenberg went with it, and caused it to be
taken to appellant's house, and told the driver not to tell
where he had taken it. Appellant testified he knew at that
time that Ed was taking that piano from the house for him,
and that it was to be taken to his house. It is obvious that
it had been previously arranged between the three brothers

Grondenberg v. Grondenberg.

that the piano should be taken to appellant's house. Yet appellant does not testify he had then bought it or bargained for it. That afternoon, Henry gave appellant a bill of sale for the piano, and in payment therefor appellant indorsed a credit of $250 on a note he held against Henry. There does not appear to have been any of the usual bargaining or discussion. It does not appear that appellant desired to obtain a piano. None of the conditions of an ordinary sale are shown, nor does it appear that Henry was insolvent or that appellant was desirous to collect or secure his note. The proof tended to the conclusion that Henry had decided to leave his wife, and that he and his brothers had decided to put this piano where she could not reach it, and to do this promptly before she had time to ascertain and enforce her legal rights; and that after they had removed the piano to appellant's house (in which he and his family were not living at the time, though it contained his household goods), it was concluded a bill of sale from Henry to appellant would place the piano further beyond appellee's reach, and that the bill of sale was executed for that purpose, and not as evidencing a genuine transfer of the property. If this had been a genuine transaction, appellant would have been likely to hesitate to buy the piano of Henry when he knew it belonged to appellee and heard her insist on her title that morning, and when he knew it had been taken from her by force.

The proof casts doubt upon the existence of the debt from Henry to appellant, apparently evidenced by the note upon which appellant indorsed $250 as the price of the piano, but we think it unnecessary to refer to that subject further than to say that appellant's personal property schedule was competent evidence against him on that point, because it was signed and sworn to by him and professed to give all his personal property, and did not mention this note. That was some proof that the note did not represent an actual debt due to him. As Henry paid $450 for the piano, and appellant claimed he had bought it for $250, there is no force in appellant's argument that there is no

proof that the value of the piano was within the jurisdiction of the County Court. What has already been said shows we approve in the main of the rulings of the trial court upon the instructions. It is argued the court erred in modifying an instruction offered by appellant by an addition relating to the effect of knowledge by or notice to appellant of appellee's rights. In one place the bill of exceptions recites that appellant offered that instruction with that clause in it, and that the court gave it as offered, while elsewhere it recites that the clause in question was added by the court. These recitals are contradictory, and we have no means of knowing which states the fact; and the bill of exceptions is appellant's pleading and is to be taken most strongly against him. The court properly admitted Henry's declarations as evidence against him, and the fact that the court gave an instruction to find him not guilty did not require the court to exclude that testimony, as requested by appellant's 7th instruction, which the court refused. The court had repeatedly ruled such declarations were only competent and were only admitted as against Henry, and would no doubt have given an instruction to that effect, if appellant had so requested.

The judgment is affirmed.

*Affirmed.*